**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

In Re:                                    *       Case No.  24-31391

LTC Transportation, LLC
                                          *       Judge Mary Ann Whipple
                                                  Chapter 11 Proceeding, Subchapter V
        Debtor
                                          *

        *                    *                        *

_____

**DEBTOR'S CHAPTER 11 PLAN UNDER SUBCHAPTER V OF TITLE**
**11 OF THE UNITED STATES CODE**
_____

Eric R. Neuman (0069794)
DILLER & RICE
1107 Adams Street
Toledo, Ohio 43604
Phone: (419) 724-9047
eric@drlawllc.com

ATTORNEY FOR DEBTOR

1

This Plan ("Plan") is being filed by the Debtor, LTC Transportation, LLC (hereinafter the "Debtor"), pursuant to Subchapter V of Title 11 of the United States Bankruptcy Code. This Plan is Three (3) years in length.

**Background**

**A. Description and History of the Debtor's Business**

The Debtor, LTC Transportation, LLC, was founded on March 31, 2017, by Tod Chiles, and his wife, Lisa Chiles. Each owned a 50% interest in the Debtor. Later, an investor, a Mr. William Fuller, was provided a 10% interest in the Debtor in exchange for an equity contribution. At the time the Debtor sought bankruptcy relief, the respective ownership interests in the Debtor were as follows: (1) Mr. Chiles, 45%; (2) Mrs. Chiles, 45%; and (3) Mr. Fuller, 10%. The Debtor is managed by Mr. Chiles, but Mrs. Chiles helps with various matters as needed. Mr. Fuller is not involved in the day-to-day operation of the Debtor's business.

The Debtor's business operations consists of hauling freight. For this purpose, the Debtor's business model consists of providing drivers and power units to haul freight for its customers. Initially, the Debtor worked almost exclusively with Cook Carriers,[1] out of Alvada, Ohio, who supplied the trailers the Debtor used in its business operations. Cook Carriers would then retain a fee of 10% for all loads the Debtor hauled.

This partnership with Cook Carriers was, for a number of years, very productive, with the Debtor gradually increasing the size of its fleet and hiring more drivers. During this period of growth, the Debtor hauled almost exclusively for Haas Garage Doors. Based upon the business generated by Haas Garage Doors, the Debtor had, in November of 2022, grown to a fleet size of 15 trucks, with receipts between $65,000.00 to $75,000.00 per week. The year 2023, however, brought challenges.

First, in the spring of 2023, one of the Debtor's trucks was involved in a rollover accident. Freight volume also began to weaken in 2023. However, particularly detrimental to the Debtor was the sale of Larson Door to a large conglomerate, with Larson Door thereafter, in the spring of 2023, dropping the Debtor as a customer, and instead contracting their shipping needs to Ryder Logistics.

Faced with the loss of its primary customers, the Debtor pivoted to working with freight brokers to obtain business. However, working with freight brokers results in the Debtor receiving less remuneration per load as the broker takes a portion of the revenue. This change in the Debtor's business model has resulted in an approximately one-third decline in the Debtor's overall revenue, with the Debtor currently having gross receipts of between $45,000.00 and $55,000.00 per week.

To offset this decline in revenue, the Debtor has undertaken cost saving measures such as cutting the number of employees, with the Debtor now down to 14 drivers. Notwithstanding, the

---

[1] Although the Debtor and Cook Carriers have a close working relationship, Cook Carriers is not an insider for purposes of 11 U.S.C. § 101.

debt structure of the Debtor (as more fully set forth herein) was premised on the business and revenue it had generated from Larson Door, but with such revenue no longer coming in it has become impossible for the Debtor to operate profitably. Based upon this, the Debtor eventually determined that it would be in its best interest to seek bankruptcy relief so as to reorganize its debts structure. Thus, on July 29, 2024, the Debtor filed a petition for relief under Chapter 11, Subchapter V, of the United States Bankruptcy Code.

In terms of assets, the Debtor does not own any real property. The Debtor operates out of the home of Mr. and Mrs. Chiles as located at 120 Meadowbrook Lane, St. Marys, Ohio. Mr. and Mrs. Chiles do not charge the Debtor any rent for the use of their home as office space. When not on the road, the Debtor's trucks are primarily located on property owned by Cook Carriers in Alvada, Ohio, although some of the Debtor's drivers do take the Debtor's trucks to their residence when they are in between jobs.

The Debtor's business assets consists primarily of its trucks. Presently, the Debtor has 14 truck, with all but three of the trucks encumbered by perfected liens noted on the respective vehicle's certificate of title. As disclosed in its bankruptcy filing, these trucks, the estimate value of these vehicles and the creditor holding the lien are as follows:

| Vehicle | Est. Value | Secured Creditor | Est. Claim |
|---|---|---|---|
| 2022 Western Star 5700XE SLP Truck VIN ending 9170 | $100,000.00 | Daimler-Chrysler | $150,332.00 |
| 2020 Western Star 5700XE Truck VIN ending 7044 | $70,000.00 | Daimler-Chrysler | $105,367.00 |
| 2023 Mack Anthem 64T Sleeper, VIN ending 0634 | $95,000.00 | Mack Financial | $157,193.00 |
| 2020 Mack Anthem 64T Sleeper VIN ending 0825 | $36,000.00 | Mack Financial | $65,540.00 |
| 2023 Mack Anthem VIN ending 4293 | $100,000.00 | Bank of Pandora | $138,505.00 |
| 2022 Mack Anthem VIN ending 7217 | $78,000.00 | Bank of Pandora | $386,907.43 |
| 2018 Freightliner CoronadoVIN eniding 5807 | $92,000.00 | Bank of Pandora | " |
| 2017 Freightliner Coronado VIN ending 8070 | $75,000.00 | Bank of Pandora | " |
| 2020 Freightliner Coronado VIN ending 8527 | $94,000.00 | Bank of Pandora | " |

3

| | | | |
|---|---|---|---|
| 2020 Freightliner Coronado VIN ending 8378 | $94,000.00 | Bank of Pandora | " |
| 2019 Kenworth T680 VIN ending 7401 | $47,000.00 | Bank of Pandora | " |
| 2019 Mack Anthem VIN ending 1475 | $52,000.00 | No Perfected Lien | |
| 2019 Mack Anthem VIN ending 2410 | $48,000.00 | No Perfected Lien | |
| Freightliner Coronado VIN ending 1724 | $94,000.00 | No Perfected Lien | |
| Total | $1,075,000.00 | | $1,003,844.43 |

In addition to the above property, the Debtor also owns (1) truck parts, tires and other miscellaneous property used for its trucks worth approximately $17,000.00, and (2) office furniture and computers and miscellaneous peripheral items worth $1,250.00. In terms of cash or cash equivalents, the Debtor maintains a bank balance of approximately $10,000.00 and its outstanding accounts receivable average $20,000.00 to $30,000.00 with the Debtor being paid on all outstanding accounts receivable within two weeks. The Debtor does not own any other property.

Besides those creditors holding an interest in the Debtor's vehicles, as set forth above, the Debtor is also indebted to United States Small Business Administration ("SBA") who holds a blanket lien on all of the Debtor's assets, but who does have a perfected lien on any of the Debtor's Vehicles. Based upon an Amended Proof of Claim filed by the SBA, the SBA set forth that they are owed the sum of $506,298.46 (Cl. No. 1-2). The Debtor does not believe that any other creditors hold an interest in its Property.

In terms of unsecured debt, the Debtor believes that there exists approximately $377,400.00 in total claims. These claims consists of three overall categories: (1) trade creditors, owed approximately $35,400.00; (2) unsecured business loans totaling $212,000.00; and (3) a claim by Mr. Chiles, totaling $130,000.00. As it regards the loan made by Mr. Chiles, the funds for such loan were obtained by Mr. Chiles obtaining an equity loan secured by a mortgage on Mr. Chile's residence.

The Debtor's income and expenses for the most recent years has been as follows:

| Year | Gross Income[2] | Expenses | Net |
|---|---|---|---|
| 2024 | $1,156,526.40 | $1,304,120.91 | ($147,594.51) |

---

[2]Through the July 31, 2024

4

| | | | |
|---|---|---|---|
| 2023 | $3,134,026.53 | $3,631,805.86 | ($497,779.33) |
| 2022 | $3,191,523.73 | $3,001,534.20 | $189,989.53 |

The Debtor's most recent and only operating report filed with the Court for the month of August showed as follows;

| Income | Expenses | Net |
|---|---|---|
| $143,229.50 | $142,206.15 | $1,023.35 |

**B. Liquidation Analysis**

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as Exhibit A. Under the Liquidation Analysis, general unsecured creditors would receive $0.00 if this case were to proceed under Chapter 7 of the United States Bankruptcy Code.

**C. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Plan Proponent's financial projections show that the Debtor will have total projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the three (3) year term of this Plan of $140,610.96. Attached hereto as Exhibit B are the Debtor's financial projections. ("Budget").

The final Plan payment is expected to be paid on the Third Anniversary from the Effective Date of this Plan.

### ARTICLE 1: SUMMARY

This Plan of Reorganization under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from its Disposable Income.

This Plan provides for:

    1 class of priority claims;
    7 classes of secured claims;
    1 class of non-priority unsecured claims; and
    1 class of equity interest.

**Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive estimated distributions over the length of this Plan of $140,610.96 ("Total

24-31391-maw    Doc 60    FILED 10/17/24    ENTERED 10/17/24 14:52:45    Page 5 of 29

Disposable Income") which the proponent of this Plan has valued at approximately 37.2 cents on the dollar. These figures are based upon the following figures:

| | |
|---|---|
| Total Disposable Income in Plan | $140,610.96 |
| Administrative Expenses | $20,000.00 (est.) |
| Priority Claims | $0.00 |
| Total general unsecured claims | $377,400.00 |

Please Note. The Total general unsecured claims is just an estimate and the amount of total general unsecured claims may increase as the Debtor intends to surrender certain trucks under this Plan, which may result in an unsecured deficiency claim. In addition, under this Plan, the Debtor is seeking to bifurcate, under 11 U.S.C. § 506, the claims of certain creditors holding an interest in the Debtor's vehicles into secured and unsecured claims based upon the value of such creditor's collateral.

**Payment of administrative expenses and priority claims:** This Plan provides for full payment of administrative expenses and priority claims. All creditors should refer to Articles 3 through 8 of this Plan for information regarding the precise treatment of their claim.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01: Class 1**. **Priority Claims**

This class consists of all allowed claims entitled to priority under § 507(a) of the Code (except administrative expenses under § 507(a)(2) ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

**2.02: Class 2. Secured Claim of United States Small Business Administration**

This Class consists of the United States Small Business Administration.

**2.03: Class 3. Secured Claim of the First National Bank of Pandora**

This Class consists of the Claim of the Secured Claim of the First National Bank of Pandora regarding loan ending 3881.

**2.04: Class 4. Secured Claim of the First National Bank of Pandora**

This Class consists of the Claim of the Secured Claim of the First National Bank of Pandora regarding all loans except as set forth in Class 3.

**2.05: Class 5. Secured Claim of Mack Financial**

This Class consists of the Secured Claim of Mack Financial regarding its security interest in a 2020 Anthem 64T Sleeper, VIN ending 0825.

### 2.06: Class 6. Secured Claim of Mack Financial

This Class consists of the Secured Claim of Mack Financial regarding its security interest in a 2023 Mack Anthem 64T Sleeper VIN ending 0634.

### 2.07: Class 7. Secured Claim of Daimler Financial Services

This Class consists of the Secured Claim of Daimler Financial Services.

### 2.08: Class 8. Secured Claim of Channel Financial Services, LLC

This class consists of the Secured Claim of Channel Financial Services, LLC.

### 2.09: Class 9. General Unsecured Claims.

This Class consists of all non-priority unsecured claims not otherwise classified and allowed under § 502 of the Code.

### 2.10 Class 10. Equity Interest

This Class consists of all outstanding membership interests in the Debtor.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

### 3.01: Unclassified claims.

Under section § 1123(a)(1), allowed administrative expenses ["gap" period claims in an involuntary case allowed under § 502(f) of the code,] and priority tax claims are not in classes.

### 3.02: Administrative expenses.

If this Plan is consensually confirmed pursuant to § 1191 of the Code, Administrative expenses allowed under § 503 of the Code [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the later of Effective Date of this Plan or when such claim arises, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Except if provided otherwise in this Plan, if this Plan is not consensually confirmed pursuant to § 1191 of the Code, administrative expenses allowed under § 503 of the Code [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid as follows consistent with section 1191(e) of the Code:

| Type | Treatment |
|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Administrative Tax Claim | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date. | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |
| Professional fees, including fees of Trustee and Debtor's counsel, as approved by the Bankruptcy Court. | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |
| Other Administrative Expenses | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |

**3.03: Priority tax claims.**

Unless it agrees to a different treatment with respect to its claim, and except as provided and specified in this Plan, each holder of an allowed priority tax claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code shall be paid in cash, in full, on the Effective Date;

8

provided, however, (a) the Debtor reserves the right to elect that holders of such Allowed Tax Claims receive cash payments deferred to the extent permitted by Section 1129(a)(9)(C) of the Code and, in such event, interest shall be paid on that portion of such Allowed Tax Claim at a rate to be agreed to by the Debtor and  the appropriate governmental unit or, if they are unable to agree, to be determined by the Bankruptcy Court; and (b) if  such Allowed Tax  Claim is for tax assessed against property of  the Estate, such Claim does not exceed the value of the interest of the Estate in such property. Claims in this Class shall be entitled to receive payment (1) ahead of general unsecured claims as provided for in this Plan, and (2) in accordance with the order of priority set forth in § 507 of the Bankruptcy Code.

In this case, the only priority claim that was filed is for the amount of $1.13 as filed by the IRS. (Cl. No. 9-1). This claim will be paid in full within 30 days of the Effective Date.

**ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

**4.01: Claims and interests are treated as follows under this Plan:**

**Class 1 – Priority claims**

This Class consists of all allowed priority claims under § 507 of the Code except those in Article 3 of the Plan. The Debtor does not believe that any claims exist in this Class.

**Claims in this Class are Impaired and are entitled to Vote on this Plan.**

<u>Treatment</u>

Unless a claimant agrees to a different treatment, any claimant holding an allowed claim in this Class shall be entitled to be paid in full, in deferred payments, on the allowed amount of their claim over the length of this Plan.

Such payments shall be paid in equal quarterly installments over the length of this Plan. The Debtor shall commence making such payments on the fifth day of the month following the Effective Date of this Plan, unless such date fall on a Saturday or Sunday or other federal holiday in which case such payment shall be due on the first day thereafter. Such distributions shall be made in accordance with the order of priority set forth in § 507(a) of the Code.

**Class 2 –Secured of the United States Small Business Administration ("SBA").**

The Debtor is indebted to the SBA based upon a Loan made by the SBA to the Debtor on June 19, 2020, in the principal amount of $150,000.00. This Loan was later modified on July 16, 2021, based upon a further extension provided to the Debtor. The total amount of proceeds extended to the Debtor under the original loan and the loan modification was $500,000.00. (Collectively the "SBA Loan"). Mr. and Mrs. Chiles guaranteed the SBA Loan.

Interest on the SBA Loan is 3.75%. Monthly payments under the SBA Loan are $2,521.00, due every month beginning Twenty-four (24) months from the date of the Original Note. The SBA Loan matures Thirty Years from the date of Original Loan.

The SBA Loan is secured by a blanket lien on all of the Debtor's assets, but is not perfected against any of the Debtor's titled Vehicles. To perfect its interest in the Debtor's other assets, the SBA filed a UCC-1 Financing Statement with the Ohio Secretary of State on June 28, 2020, designated document number OH00242731102.

The SBA filed a proof of Claim in this case in the amount $506,298.46. (Cl. No 1-2). This Claim is asserted as fully secured. ("SBA Claim").

**The Claim in this Class is Not Impaired and is not entitled to Vote on this Plan.**

Treatment

Under this Plan, the Debtor shall leave unaltered the legal, equitable, and contractual rights of the SBA under the SBA Loan and its related Loan Documents and on the SBA Claim.

Pursuant to 11 U.S.C. § 1191(1), until the allowed amount of the SBA Claim is fully paid, the Debtor shall not be discharged with respect to the allowed amount of the SBA Claim as due and owing on the SBA Loan. To the extent provided for under applicable law and the SBA Loans, until the allowed amount of the SBA Claim is paid in full, the SBA shall, on account of its Claim, retain its secured interest in the Reorganized Debtor's property up to the amount due and owing on the SBA Claim and the SBA Loan. Upon its Claim being fully paid according to the terms of this Plan, any further interests claimed by the SBA in the Reorganized Debtor's property shall vest in the Reorganized Debtor free and clear of such interests.

Nothing in this Plan shall compromise or release any recourse the SBA may have against Mr. and Mrs. Chiles pursuant to the SBA Loan to the extent provided for under the SBA Loan Documents and applicable law.

Payments on the SBA Claim shall be paid by the Debtor notwithstanding that this Plan is not consensually confirmed under 11 U.S.C. § 1191.

**Class 3 – Secured Claim of the First National Bank of Pandora ("FNBP").**

**The treatment afforded to FNBP in this Class applies solely to its Loan to the Debtor ending 3881.**

On October 28, 2022, the FNBP entered into a Loan Agreement, ending 3881, with the Debtor under which it loaned to the Debtor the sum of $151,200.00. ("FNBP Loan"). The proceeds from the FNBP Loan were used by the Debtor to purchase a 2023 Anthem Truck, VIN Ending 4293. ("Vehicle"). The FNBP Loan was later modified by an amendment dated January 26, 2024.

Under the FNBP Loan, as modified, interest is fixed at the rate of 7.25% with the FNBP Loan, as modified, maturing on October 28, 2027. Upon maturing, a balloon payment of $80,270.33 is due to FNBP on the FNBP Loan. Under the FNBP Loan, as modified, the Debtor is required to make monthly payment to FNBP of $2,087.87 per month.

The FNBP Loan is secured against the Vehicle, with FNBP's interest in the Vehicle noted on the Vehicle's Certificate of Title and with FNBP having possession of the Vehicle's certificate of title. ("FNBP Security Interest")

The Debtor in this case has filed a Motion with the Court to Determine the Value of the Vehicle and the secured status of FNBP with respect to the Vehicle. (Doc. No. 35) ("Valuation Motion"). In this Motion, the Debtor asks that the Court determine the value of the Vehicle to be $97,000.00 and that FNBP's secured claim under the Vehicle be limited to the sum of $97,000.00 for purposes of this Plan and that any remaining claim of FNBP under the FNBP Loan be deemed to be an unsecured claim.

**The Claim in this Class is impaired and is entitled to Vote on this Plan.**

Treatment

Under this Plan, the Debtor shall surrender the Vehicle to FNBP. Unless such relief is granted earlier, confirmation of this Plan shall result in the Vehicle being abandoned from the bankruptcy estate at which time FNBP shall be entitled to repossess the Vehicle and thereafter exercise its rights with respect to the Vehicle under applicable law.

Under this Plan, FNBP shall retain its lien against the Vehicle to the extent provided for under applicable law and its Loan Documents with the Debtor.

Any claim filed by FNBP with respect to FNBP Loan and the FNBP Security Interest, to the extent allowed, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 9 of the Plan regarding the treatment afforded to general unsecured creditors.

Nothing in this Plan shall compromise or release any recourse FNBP may have against Mr. and Mrs. Chiles pursuant to the FNBP Loan to the extent provided for under the FNBP Loan Documents and applicable law.

**Class 4 – Secured Claims of the First National Bank of Pandora ("FNBP").**

**The treatment afforded to FNBP in this Class applies to all Loans made by FNBP to the Debtor except as set forth in Class 3 of the Plan.**

In addition to the Loan made by FNBP as set forth in Class 3 of this Plan, FNPB also made the following loans to the Debtor:

11

| Loan Number ending | Amount Loan | Date | Amount per claim |
|---|---|---|---|
| 3400 | $800,000.00 | 12-16-2021 | $394,529.58 (Cl. 4) |
| 4076 | $80,000.00 | 3-24-2023 | $81,193.84 (Cl. 6) |
| 4077 | $30,000.00 | 9-24-2023 | $23,686.47 (Cl. 5) |
| | | Total | $499,409.89 |

(Collectively "FNBP Loans").

The Loan ending 3400 was taken to purchase the following vehicles:

| Vehicle | Scheduled Value |
|---|---|
| 2022 Mack Anthem, VIN ending 7217 | $78,000.00 |
| 2018 Freightliner Coronado, VIN ending 5807 | $92,000.00 |
| 2017 Freightliner Coronado, VIN ending 8070 | $75,000.00 |
| 2020 Freightliner Coronado, VIN ending 8527 | $94,000.00 |
| 2020 Freightliner Coronadom VIN ending 8378 | $94,000.00 |
| 2019 Kenworth T680, VIN ending 7401 | $47,000.00 |
| Total: | $480,000.00 |

(Collectively "Vehicles").

The Loan ending 4076 was a line of credit extended by FNBP to the Debtor. The Loan ending 4077 was extended to make an engine repair to one of the Vehicles.

The FNBP Loans are secured against the Vehicles, with FNBP's interest in the Vehicles noted on the Vehicles' Certificate of Title and with FNBP having possession of the Vehicles' certificate of title. ("FNBP Security Interest").

**The Claim in this Class is Impaired and is entitled to Vote on this Plan.**

Treatment

Under this Plan, the Debtor shall surrender the Vehicles to FNBP. Unless such relief is granted earlier, confirmation of this Plan shall result in the Vehicles being abandoned from the bankruptcy estate at which time FNBP shall be entitled to repossess the Vehicles and thereafter exercise its rights with respect to the Vehicles under applicable law.

Under this Plan, FNBP shall retain its lien against the Vehicles to the extent provided for under applicable law and its Loan Documents with the Debtor.

Any claim filed by FNBP with respect to FNBP Loans and the FNBP Security Interest, to the extent allowed, shall be treated as a general unsecured claim and shall be dealt with and

provided for in Class 9 of the Plan regarding the treatment afforded to general unsecured creditors.

Nothing in this Plan shall compromise or release any recourse FNBP may have against Mr. and Mrs. Chiles pursuant to the FNBP Loan to the extent provided for under the FNBP Loan Documents and applicable law.

**Class 5 – Secured Claim of Mack Financial Services ("Mack Financial")**

**The treatment afforded to Mack Financial in this Class applies solely to its security interest in a 2020 Anthem 64T Sleeper, VIN ending 0825**

On December 17, 2019, Mack Financial entered into a Loan Agreement with the Debtor under which Mack Financial loaned to the Debtor the sum of $149,025. ("Mack Loan"). The proceeds from the Mack Loan were used by the Debtor to purchase a 2020 Mack Anthem 64T Sleeper Truck, VIN ending 0825. ("Vehicle"). The Mack Loan was assigned to Northpoint Commercial Finance, LLC. ("Northpoint").

Under the Mack Loan, as assigned, the Debtor is required to make equal monthly payments of $2,725.05 for a period of 72 months. The Mack Loan is secured against the Vehicle, with Mack Financial's interest in the Vehicle noted on the Vehicle's Certificate of Title and with either Mack Financial or Northpoint having possession of the Vehicle's certificate of title.

The Debtor in this case has filed a Motion with the Court to Determine the Value of the Vehicle and the secured status of Mack Financial with respect to the Vehicle. (Doc. No. 34) ("Valuation Motion"). Based upon an agreement between the Debtor and Northpoint, the following treatment will be afforded with respect to Mack Loan and the security interest in the Vehicle.

**The Claim in this Class is impaired and is entitled to Vote on this Plan.**

<u>Treatment</u>

The Claim of Mack Financial and/or Northpoint under the Mack Loan shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $36,000.00 with respect to the Vehicle. ("Secured Claim"). Any remaining claim of Mack Financial and/or Northpoint under the Mack Loan, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 9 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of Mack Financial based upon an amortization of the Secured Claim over a period of five years at an annual interest rate of 7.5%. Payments on the Secured Claim of Mack Financial and/or Northpoint shall total $721.37 per month.

Payments on the allowed amount of such secured claim shall be made monthly

commencing on the fifth day of month following the Effective Date of the Plan, and continuing each month thereafter, unless such date falls on a Saturday or Sunday, or other federal holiday in which case such payment shall be due on the first business day thereafter. Notwithstanding, any payments received by Mack Financial and/or Northpoint as adequate protection payments prior to confirmation of the Plan shall be applied by Mack Financial and/or Northpoint to the Secured Claim pursuant to amortization of the Secured Claim as set forth in the preceding paragraph.

Payments on the Mack Secured Claim shall be paid by the Debtor notwithstanding that this Plan is not consensually confirmed under 11 U.S.C. § 1191.

Pursuant to 11 U.S.C. § 1123(a)(5)(G), any default or penalties existing on the Effective Date of this Plan shall be deemed waived.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of Mack Financial is paid in full, according to the terms of this Plan, Mack Financial shall, on account of its Secured Claim, retain its secured interest in the Reorganized Debtor's property up to the amount due and owing on its Secured Claim. Upon the Secured Claim of Mack Financial being fully paid according to the terms of this Plan, any further interests claimed by Mack Financial in the Reorganized Debtor's property shall vest in the Reorganized Debtor free and clear of such interests.

Nothing in this Plan shall compromise or release any recourse Mack Financial and/or Northpoint may have against Mr. and Mrs. Chiles pursuant to the Mack Loan to the extent provided for under the Mack Loan Documents and applicable law.

**Class 6 – Secured Claim of Mack Financial Services ("Mack Financial")**

**The treatment afforded to Mack Financial in this Class applies solely to its security interest in a 2023 Mack Anthem 64T Sleeper VIN ending 0634**

On March 3, 2023, Mack Financial entered into a Loan Agreement with the Debtor under which Mack Financial loaned to the Debtor the sum of $184,283.16. ("Mack Loan"). The proceeds from the Mack Loan were used by the Debtor to purchase a 2023 Mack Anthem 64T Sleeper Truck, VIN ending 0643. ("Vehicle").

Under the Mack Loan, the Debtor is required to make equal monthly payments of $3,816.73 for a period of 60 months, commencing April 18, 2023. The Mack Loan is secured against the Vehicle, with Mack Financial's interest in the Vehicle noted on the Vehicle's Certificate of Title and with Mack Financial having possession of the Vehicle's certificate of title. ("Mack Security Interest").

**The Claim in this Class is Impaired and is entitled to Vote on this Plan.**

Treatment

Under this Plan, the Debtor shall surrender the Vehicle to Mack Financial. Unless such

relief is granted earlier, confirmation of this Plan shall result in the Vehicle being abandoned from the bankruptcy estate at which time Mack Financial shall be entitled to repossess the Vehicle and thereafter exercise its rights with respect to the Vehicle under applicable law.

Under this Plan, Mack Financial shall retain its lien against the Vehicle to the extent provided for under applicable law and its Loan Documents with the Debtor.

Any claim filed by Mack Financial with respect to Mack Loan and Mack Security Interest, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 9 of the Plan regarding the treatment afforded to general unsecured creditors.

Nothing in this Plan shall compromise or release any recourse Mack Financial may have against Mr. and Mrs. Chiles pursuant to the extent provided for under its Loan Documents and applicable law.

**Class 7 – Secured Claims of Daimler Truck Financial Services ("Daimler")**

On September 29, 2022, Daimler entered into a Loan and Security Agreement with the Debtor under which it loaned to the Debtor the sum of $187,149.00. ("Daimler Loan 1"). The proceeds of Daimler Loan 1 were used by the Debtor to purchase a 2022 a Western Star 5700XE SLP Truck, VIN ending 9170. ("Vehicle 1").

Under Daimler Loan 1, the Debtor is required to make equal monthly payments of $3,852.11 for a period of 60 months, commencing November 13, 2022. Daimler Loan 1 is secured against Vehicle 1, with Daimler's interest in Vehicle 1 noted on the Vehicle 1's Certificate of Title and with Daimler having possession of Vehicle 1's certificate of title.

On October 14, 2022, Daimler entered into a Loan and Security Agreement with the Debtor under which it loaned to the Debtor the sum of $131,149.00. ("Daimler Loan 2"). The proceeds of Daimler Loan 2 were used by the Debtor to purchase a 2020 Western Star 5700XE Truck, VIN ending 7044. ("Vehicle 2").

Under Daimler Loan 2, the Debtor is required to make equal monthly payments of $2,699.45 for a period of 60 months, commencing November 28, 2022. Daimler Loan 2 is secured against Vehicle 2, with Daimler's interest in Vehicle 2 noted on the Vehicle 2's Certificate of Title and with Daimler having possession of Vehicle 2's certificate of title.

**The Claim in this Class is Impaired and is entitled to Vote on this Plan.**

**Treatment**

Under this Plan, the Debtor shall surrender Vehicle 1 and Vehicle 2 to Daimler. Unless such relief is granted earlier, Confirmation of this Plan shall result in Vehicle 1 and Vehicle 2 being abandoned from the bankruptcy estate at which time Daimler shall be entitled to repossess Vehicle 1 and Vehicle 2 and thereafter exercise its rights with respect to said vehicles under

applicable law.

Under this Plan, Daimler shall retain its liens against Vehicle 1 and Vehicle 2 to the extent provided for under applicable law and its Loan Documents with the Debtor.

Any claim(s) filed by Daimler with respect to Daimler Loan 1 and Daimler Loan 2, and its security interest, to the extent allowed, shall be treated as a general unsecured claim(s) and shall be dealt with and provided for in Class 9 of the Plan regarding the treatment afforded to general unsecured creditors.

**Class 8 – Secured Claim of Channel Partners Capital, LLC ("Channel").**

On September 15, 2023, the Debtor entered into a Business Loan and Security Agreement with Channel. ("Channel Loan"). Under the Channel Loan, Channel lent to the Debtor the sum of $200,000.00. As security for the Channel Loan, the Debtor granted to Channel a security interest in substantially all of its Property. ("Channel Security Interest"). Channel perfected its security interest by filing with the Ohio Secretary of State a UCC-1 statement dated July 1, 2024, document number OH00282811807. The Channel Security Interest is junior to the security interest claimed by the Channel in the Debtor's property.

On August 19, 2024, Channel filed a proof of claim in the case. (Cl. No. 2-1). The Claim is filed as a general unsecured claim in the amount of $115,726.69. ("Claim"). Channel and the Debtor reached an agreement, incorporated herein, regarding the treatment of its Claim.

**The Claim in this Class is Impaired and is entitled to Vote on this Plan.**

<u>Treatment</u>

The Debtor shall not object to the Claim of Channel and unless another party in interest objects to the Claim, the Claim of Channel Partners shall be allowed as a general unsecured claim in the amount filed and shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 9 of the Plan regarding the treatment afforded to general unsecured creditors.

Upon confirmation of this Plan, any interest claimed by Channel in property of the estate under the Channel Security Interest shall be deemed released and void except if either of the following apply:

(a) This bankruptcy case is dismissed; or

(b) it is found that, at the commencement of the bankruptcy case, the value of the Debtor's property, which is subject to the security interest of the SBA, is in excess of the value of the claim of the SBA thereby allowing the Channel Security Interest to attach to equity the Debtor's property.

Nothing in this Plan shall compromise or release any recourse Channel may have against Mr. and

Mrs. Chiles pursuant to Channel Loan and related loan documents to the extent provided for under the Channel Loan and related loan documents and applicable law.

**Class 9 – General Unsecured Claims**

This Class consists of all general unsecured claims not otherwise classified or provided for in other provisions in this Plan. Only creditors holding allowed unsecured claims shall, as provided for in 11 U.S.C. § 502(a), be entitled to receive a distribution according to the Treatment provided for in this Class. Subject to the provisions of § 502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order.

**Claims in this Class are impaired and are entitled to Vote on this Plan.**

<u>Treatment</u>

Allowed unsecured claims will be paid pro-rata from the Debtor's Disposable Income, as defined in 11 U.S.C. § 1191(d), after and subject to the payment of those administrative expenses and costs provides for in Article 3 of this Plan. In no event, however, shall allowed claims in this Class, as a group, receive less than the Liquidation Value of the Debtor's assets as provided in attached Exhibit A. No interest shall accrue on any Claims in this Class.

The Debtor's Disposable Income shall be based upon the net income received by the Debtor based upon those cash flow projection as attached hereto as Exhibit B. Based upon these projections, the Debtor's total disposable income over the length of this Plan is $140,610.96.

The Debtor shall make equal monthly payments of its Disposable Income in the amount as follows:

| Year 1 | $2,173.86 |
| Year 2 | $5,083.62 |
| Year 3 | $4,460.10 |

Such payments shall be disbursed, pro-rata, to claimants holding allowed claims. Such payments shall commence by the Reorganized Debtor on the fifth day of the month following the Effective Date of this Plan and shall continue to be made on the first day each month thereafter until completion of the Plan unless such day falls on a Saturday, Sunday or other federal holiday in which case such payment shall be due on the first business day thereafter.

Unless this Plan is consensually confirmed under 11 U.S.C. § 1191(a), payments due in this Class shall be paid by the Debtors to the Trustee for distribution according to the terms set forth herein.

No interest shall accrue on any claim in this Class.

**Class 10 – Equity holders**

This class consists of the outstanding shares of stock held by Tod Chiles, Lisa Chiles and William fuller.

**Interests in this Class are not impaired and are not entitled to Vote on this Plan.**

Treatment

Confirmation of this Plan shall cause all prepetition membership interests issued by the Debtor to be revested in and retained by those entities holding an interest in the outstanding membership interest of the Debtor as of the Petition Date and shall be subject to and based upon the terms and conditions as they existed on the Petition Date including under any Operating Agreements and other duly executed business documents.

## ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01: Disputed claim**.

A disputed claim is a claim that has not been allowed or disallowed and as to which either:

(i) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

Timing of Objections: The Debtor or any party in interest may object to the allowance of any Claim, whether listed on the Schedules filed by Debtors, or filed by any Creditor, on or before the later of 60 days after the Effective Date of the Plan, unless a proof of claim or an amendment to an existing proof of claim is filed more than 30 days after the Effective Date in which case the Debtor or any party in interest shall be required to file an objection to such claim within 60 days after the filing of such claim or amendment thereto.

**5.02: Delay of distribution on a disputed claim.**

No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03 Settlement of disputed claims.**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

**5.04 Full Payment of Small Claims**

In its discretion, the Debtor shall have the right to fully pay, in one lump sum, any claim under this Plan where the total amount due to such claimant under this Plan is $500.00 or less.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) Unless specifically rejected prior to confirmation of this Plan, the Debtors assume, and if specified assigns, the following executory contracts and unexpired leases as of the Effective Date of the Plan: N.A.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the Effective Date or under Article 6(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the date on which the Bankruptcy Court enters the order confirming this Plan.

## ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan will be implemented and funded through the future business operations of the Debtor. The Debtor may also seek to obtain post-confirmation financing, but this is not expected in the short term. As a part of its reorganization, the Debtor may sell or lease its Vehicles to the extent that it determined that a sale or lease of the Vehicles would be beneficial to the Debtor's business operations and its implementation of this Plan.

Order of Distribution: After payment of allowed secured claims, funds shall be disbursed in the following order of priority:

(1) Payment of allowed Administrative Expenses as provided in Section 3.02;

(2) Payment of Priority Tax Claims provided in Section 3.03;

(3) Payment of Priority Claims provided in Section 4.01;

(4) Payment to those creditors, on a pro-rata basis, holding allowed claims in Class 9 of the Plan.

Section 1129(a)(5) Disclosure-The following is disclosed pursuant to 11 U.S.C. § 1129(a)(5):

Mr. Chiles will continue to serve as sole managing member of the Reorganized Debtor and perform managerial duties for the Reorganized Debtor. He will receive a week salary of $1,000.00 per week for these services. The Reorganized Debtor will not provide to Mr. Chiles any other form of compensation.

It is anticipated that Mrs. Chiles will perform administrative duties for the Reorganized Debtor. She will receive a week salary of $500.00 per week for these services. The Reorganized Debtor will not provide to Mrs. Chiles any other form of compensation.

Phillip Chiles, the son of Mr. and Mrs. Chiles, will continue to work for the Reorganized Debtor as a driver. Consistent with past practices, Phillip Chiles will be paid a mileage rate of $.55 plus $54 per diem. From August 1, 2023, through July 31, 2024, Phillip Chiles was paid $76,277.29. It is expected that the compensation of Mr. Chiles in the future will be similar.

No other insiders will be employed by the Debtor.

The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date and/or the 5th day of the month following the Effective Date. For this purpose, the Debtor expects to have cash on hand of approximately $15,000.00 and receipts and due receivables of approximately $35,000 between the time of the Confirmation Date and the Effective date of the Plan, 30 days later. Said funds are sufficient to commence making those payments as provided for in this Plan.

To the extent there are not sufficient funds to make these required payments, one or more of the Debtor's principals will make upon for any deficiency from their personal assets or by foregoing compensation from the Reorganized Debtor.

## ARTICLE 8: VESTING

Pursuant to 11 U.S.C. § 1141(b), on Confirmation of the Plan all property of the estate will revest in the Reorganized Debtor, except as otherwise provided in the Plan or the Confirmation Order.

Pursuant to 11 U.S.C. § 1141(c), on Confirmation of the Plan, all property of the Debtor dealt with in the Plan, tangible and intangible, including, without limitation, equipment, inventory, vehicles, licenses, furniture, fixtures and equipment, receivables and cash will revert, free and clear of all Claims and Interests claimed against the Debtor's property except as otherwise provided in the Plan or the Confirmation Order.

## ARTICLE 9: CLAIMS OF DEBTOR

**9.01 Preservation of Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtor, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved Notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, which

shall be deemed released and waived by the Debtor and the Reorganized Debtor as of the Effective Date.

## ARTICLE 10: GENERAL PROVISIONS

**10.01  Definitions and rules of construction.**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

**Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of reserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**Allowed Claim**: Except as otherwise specified in this Plan, any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**Allowed Secured Claim**: Except as otherwise specified in this Plan, Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**Bankruptcy Court**: The United States Bankruptcy Court for the Northern District of Ohio.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which the Debtor, LTC Transportation, LLC is the Debtor-in-Possession.

**Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**Debtor** and **Debtor-in-Possession**: The Debtor, LTC Transportation, LLC  the debtor-in-possession in this Chapter 11 Case.

**Disposable Income**: Shall have that meaning ascribed to such term under § 1191(d) of the Code

**Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed or which is subject to continuing litigation.

**Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**Equity Interest**: An ownership interests in the Debtor.

**Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**Petition Date**: July 29, 2024, the date the chapter 11 petition for relief was filed.

**Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**Reorganized Debtor**: The Debtor after the Effective Date.

**Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtors with the Bankruptcy Court listing liabilities and assets.

**Total Disposable Income:** means that income which, pursuant to Exhibit B, the Debtors have calculated its income to be for purposes of 11 U.S.C. § 1181(d).

**Trustee**: Patricia Fugee, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

### 10.02 Effective Date.

The Effective Date of this Plan is the day that is 30 days after the entry of the Confirmation Order. If, however, a stay of the confirmation order is in effect on that date, the

effective date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**10.03 Severability**.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**10.04 Binding effect.**

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**10.05 Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**10.06 Controlling effect.**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Ohio govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**10.07 Corporate governance**.

Upon confirmation, the Board of Directors shall promptly take the required action to amend the debtor's charter to include provisions prohibiting the issuance of nonvoting stock, and providing, as to the several classes of securities possessing voting power, fair and equitable distribution of such power among such classes, including, in the case of any class of stockholders having a preference over another class of stockholders with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

**10.08 Retention of Jurisdiction**

The Bankruptcy Court confirming the Plan shall retain jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

**ARTICLE 12: DISCHARGE**

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(i)      imposed by this Plan; or

(ii)     (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Third-Party Release-Nothing in this Plan shall be construed to release or discharge any third part, from any liability for any claim in this case.

## ARTICLE 13: PAYMENTS

Unless specified otherwise in the Plan, if the Plan is confirmed under §1191(a), payments due under the Plan shall be made by the Debtor to the Trustee for distribution to Creditors provided for in the Plan and pursuant to §1194(a) of the Code. Once the Trustee's service is terminated under § 1183(c), the Debtors shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Debtor shall make all payments to the Trustee for distribution to Creditors provided for in the Plan pursuant to §1194(b) of the Code.

## ARTICLE 14: LENGTH OF PLAN

Unless otherwise ordered by the Bankruptcy Court, the length of this Plan shall be three years, commencing on the Effective Date.

## ARTICLE 15: REMEDIES IN EVENT OF DEFAULT UNDER PLAN

If the Debtor fails to make payments and distributions as required under the Plan, any creditor or party in interest may seek to have this case converted to a proceeding under Chapter 7 of the United States Bankruptcy Code, seek dismissal of this case under 11 U.S.C. § 1112 or seek any other remedy provided by law or in the Plan.

## ARTICLE 16: TAX CONSEQUENCES OF PLAN

The Plan and the resulting tax consequences may be complex, and the tax consequences of the Plan will depend upon certain factual determinations. No ruling has been or will, prior to the Effective Date, be requested from the Internal Revenue Service regarding the tax consequences of the Plan. No assets of the Debtor have been sold or transferred since the filing of this case and as a result, no tax consequences as to such assets have arisen since the filing of this case. However,

**BECAUSE THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND MAY VARY BASED ON INDIVIDUAL CIRCUMSTANCES THIS DISCLOSURE STATEMENT RENDERS NO TAX ADVICE ON THE TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN TO ANY PARTICULAR CREDITOR, TO THE DEBTOR, OR TO INTEREST HOLDERS. EACH PARTY IS URGED TO CONSULT HIS OR HER TAX ADVISOR AS TO THE TAX CONSEQUENCES OF THE PLAN TO HIM OR HER INCLUDING ANY CONSEQUENCES UNDER STATE OR LOCAL TAX LAWS**.

The following constitutes a summary of the potential tax consequences which may arise upon confirmation of the Plan.

1. Tax Consequences to the Debtors.

Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness income ("COD Income") realized during the taxable year, which generally includes the amount of principal debt discharged and any interest that has been previously accrued and deducted for tax purposes but remains unpaid at the time the indebtedness is discharged. The Tax Code permits a debtor in bankruptcy to exclude its COD Income from gross income, but requires the debtor to reduce certain tax attributes by the amount of the excluded COD Income. It is likely that the Debtors will realize a significant amount of COD Income upon the consummation of the Plan. The Debtor will not be required to include COD Income in gross income because the indebtedness will be discharged while the Debtors are under the jurisdiction of a court in a Title 11 case.

2. Certain U.S. Federal Income Tax Consequences to Holders of Claims and Equity Interests

The U.S. Federal Income Tax consequences to holders of allowed claims arising from the distributions to be made in satisfaction of their claims pursuant to a bankruptcy plan of reorganization may vary, depending upon, among other things: (a) the type of consideration received by the holder of a claim in exchange for the indebtedness it holds; (b) the nature of the indebtedness owed to it; (c) whether the holder has previously claimed a bad debt or worthless security deduction in respect of its claim against the corporation; (d) whether such claim constitutes a security; (e) whether the holder of a claim is a citizen or resident of the United States for tax purposes, or otherwise subject to U.S. federal income tax on a net income basis; (f) whether the holder of a claim reports income on the accrual or cash basis; and (g) whether the

holder of a claim receives distributions under the bankruptcy plan in more than one taxable year. For tax purposes, the modification of a claim may represent an exchange of the claim for a new claim, even though no actual transfer takes place. In addition, where a gain or loss is recognized by the holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the claim constitutes a capital asset in the hands of the holder and how long it has been held or is treated as having been held, whether the claim was acquired at a market discount, and whether and to what extent the holder previously claimed a bad debt deduction with respect to the underlying claim.

Internal Revenue Service Circular 230 Notice: To ensure compliance with Internal Revenue Service Circular 230, holders of Claims and Equity Interests are hereby notified that: (A) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (B) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (C) holders of Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.

Dated:                                   */s/Tod Chiles*
                                          Tod Chiles
                                          Managing Member

| Asset | Scheduled Value | Liquidation Value | Secured Claim | Value to Estate | Note |
|---|---|---|---|---|---|
| Cash | $87.80 | $87.80 | $506,298.46 | $0.00 | Per Claim filed by SBA (Cl. No 1-2) |
| Accounts receivable | $80,000.00 | $50,000.00 | $506,298.46 | $0.00 | Per Claim filed by SBA (Cl. No 1-2) |
| Inventory and Supplies | $17,000.00 | $8,500.00 | $506,298.46 | $0.00 | Per Claim filed by SBA (Cl. No 1-2) |
| Office Furniture and other office property | $1,250.00 | $500.00 | $506.298.46 | $0.00 | Per Claim filed by SBA (Cl. No 1-2) |
| 2022 Western Star 5700XE SLP Truck VIN ending 9170 | $100,000.00 | $80,000.00 | $259,608.02 | $0.00 | Per Claim filed by Daimler (Cl. No. 11-1) |
| 2020 Western Star 5700XE Truck VIN ending 7044 | $70,000.00 | $50,000.00 | $259,608.02 | $0.00 | Per Claim filed by Daimler (Cl. No. 11-1) |
| 2023 Mack Anthem 64T Sleeper VIN ending 0634 | $95,000.00 | $60,000.00 | $144,144.79 | $0.00 | Per Claim filed by VFS (Cl. No. 7-1) |
| 2020 Mack Anthem 64T Sleeper VIN einding 0825 | $36,000.00 | $20,000.00 | $57,626.51 | $0.00 | Per Claim filed by Northpoint (Cl. No. 10-1) |
| 2023 Mack Anthem VIN ending 4293 | $100,000.00 | $80,000.00 | $126,876.50 | $0.00 | Per Proof of Claim filed by Pandora Bank. (Cl. No. 3-1) |
| 2022 Mack Anthem VIN ending 7217 | $78,000.00 | $55,000.00 | $499,409.89 | $0.00 | Per proofs of claim filed by Pandora Bank. (Cl. No. 4-1, 5-1 and 6-1) |
| 2018 Freightliner Coronado VIN eniding 5807 | $92,000.00 | $70,000.00 | $499,409.89 | $0.00 | Per proofs of claim filed by Pandora Bank. (Cl. No. 4-1, 5-1 and 6-1) |
| 2017 Freightliner Coronado VIN ending 8070 | $75,000.00 | $55,000.00 | $499,409.89 | $0.00 | Per proofs of claim filed by Pandora Bank. (Cl. No. 4-1, 5-1 and 6-1) |
| 2020 Freightliner Coronado VIN ending 8527 | $94,000.00 | $71,000.00 | $499,409.89 | $0.00 | Per proofs of claim filed by Pandora Bank. (Cl. No. 4-1, 5-1 and 6-1) |
| 2020 Freightliner Coronado VIN ending 8378 | $94,000.00 | $71,000.00 | $499,409.89 | $0.00 | Per proofs of claim filed by Pandora Bank. (Cl. No. 4-1, 5-1 and 6-1) |
| 2019 Kenworth T680 VIN ending 7401 | $47,000.00 | $30,000.00 | $499,409.89 | $0.00 | Per proofs of claim filed by Pandora Bank. (Cl. No. 4-1, 5-1 and 6-1) |
| 2019 Mack Anthem VIN ending 1475 | $52,000.00 | $35,000.00 | $506,298.46 | $0.00 | Per Claim filed by SBA (Cl. No 1-2) |
| 2019 Mack Anthem VIN ending 2410 | $48,000.00 | $32,000.00 | $506,298.46 | $0.00 | Per Claim filed by SBA (Cl. No 1-2) |
| FREIGHTLINER Coronado VIN ending 1724 | $94,000.00 | $75,000.00 | $506,298.46 | $0.00 | Per Claim filed by SBA (Cl. No 1-2) |
| Sub Totals | $1,173,337.80 | $843,087.80 | | $0.00 | |

| Other Deductions | | |
|---|---|---|
| | Priority Claims | $1.13 |
| | Chapter 11 Administrative Claims (est) (atty fees and trustee fees) | $20,000.00 |
| | Chapter 7 Adminstrative Costs (Auctioneer) | $117,333.78 |
| | Statutory Fees of Chapter 7 Trustee | $58,666.89 |
| | Total Liquidation Value of Debtor | $0.00 |

| EXHIBIT B | Miles/wk range | MONTHLY REVENUE miles/mo | rate | Mileage Revenue Monthly | Fuel surcharge | stops $65 | Total Monthly Revenue | MONTHLY EXPENSES Fee Fleet Monthly 10% | Fuel | Tires | Maint | Deadhead | Tolls | Cargo Ins | Trailer Rental | Driver Salary/Compensaton | Payment to SBA | Misc | CH 11 admin. Expenses | licenses and insurance | salaries | Truck payments (Northpoint) | Monthly Net Net | Annual Net |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4 Trucks | | | | | | | | | | | | | | | | | | | | | | | |
| Yr One | 9600 | 41568 | $2.00 | $87,626.00 | $3,840.00 | $650.00 | $92,116.00 | $8,762.60 | $21,743.26 | $2,909.76 | $7,897.92 | $1,728.00 | $500.00 | $3,897.00 | $3,464.00 | $29,947.60 | $2,521.00 | $250.00 | $600.00 | $2,000.00 | $3,000.00 | $721.00 | $2,173.86 | $26,086.32 |
| YR Two | 9600 | 41568 | $2.10 | $91,782.80 | $3,840.00 | $650.00 | $96,272.80 | $9,178.28 | $21,743.26 | $2,909.76 | $8,729.28 | $1,728.00 | $500.00 | $3,897.00 | $3,464.00 | $29,947.60 | $2,521.00 | $250.00 | $600.00 | $2,000.00 | $3,000.00 | $721.00 | $5,083.62 | $61,003.44 |
| Year Three | 9600 | 41568 | $2.15 | $93,861.20 | $3,840.00 | $650.00 | $98,351.20 | $9,386.12 | $21,743.26 | $2,909.76 | $9,560.64 | $1,728.00 | $500.00 | $3,897.00 | $3,464.00 | $31,610.32 | $2,521.00 | $250.00 | $600.00 | $2,000.00 | $3,000.00 | $721.00 | $4,460.10 | $53,521.20 |
| | | | | | | | | | | | | | | | | | | | | | | Total | | $140,610.96 |

2026 Fuel cost 3.20/gal
2027 fuel cost  3.00/gal

Deadhead is unloaded miles
Debtor is paid flat rate of $65.00 per stop
Fuel surcharge  is extra revenue based on the price of deisel fuel
Fuel Surcharge fluctuates in proportion to fuel prices